JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Mario Gross, appeals from his convictions for two counts of rape, two counts of kidnapping, and one count each of aggravated robbery, felonious assault, domestic violence and intimidation. He urges that there was insufficient evidence to support the aggravated robbery and rape charges. We find no error in the proceedings below and affirm the trial court's judgment.
 Procedural History and Facts {¶ 2} Appellant was charged in an eight-count indictment filed August 2, 2006 with two counts of rape with sexually violent predator specifications; two counts of kidnapping with sexual motivation and sexually violent predator specifications; aggravated robbery; felonious assault; domestic violence; and intimidation. Appellant waived his right to a jury trial and proceeded to trial before the court. At the conclusion of the state's case, the court dismissed the sexual motivation specification as to one of the kidnapping charges. The court subsequently found appellant guilty of all of the charges. It dismissed the sexually violent predator specifications, sentenced appellant to a total of twenty-two years' imprisonment, and found that he was neither a sexual predator nor an habitual sexual offender.
 {¶ 3} At trial, the state presented the testimony of Pennsylvania State Trooper Marc Stevick; Cleveland Police Detectives John Freehoffer and Daniel Ross; forensic nurse examiner Patricia McMahon; forensic scientist Russell Edelheit; and the victim, N.B. *Page 4 
 {¶ 4} The victim's testimony is the only testimony relevant to this appeal. The victim testified that appellant was the father of her four-year-old child. As of March 2004, she and the appellant were not dating. Appellant called her and asked her to go out with him, and she agreed. She picked appellant up in her white 2004 Dodge Intrepid, and they went to a bar, where they met a friend, Curtis. Later, they went to "OJ's house," then she, appellant, Curtis and OJ went to an after-hours place. They took OJ and Curtis home and appellant was driving toward his home when appellant asked the victim why she slept with "Poonks," a friend of his. She told appellant that she did it to get back at him for cheating on her, and that she and appellant hadn't been together when she first slept with Poonks. Appellant pulled the car into a vacant factory parking lot and turned the car off.
 {¶ 5} Appellant and the victim yelled at one another. After arguing for five or ten minutes, appellant pulled down the victim's jeans and pushed her sideways in the passenger seat so that her face was against the window and her buttocks were facing the driver's seat. He then said, "This is my pussy. . . . Why are you giving my pussy to someone else. Bitch, I made you." He used his hands to lift open her vaginal area, then put his penis in her vagina and engaged in sexual intercourse with her for about three minutes. The victim was crying. Appellant then "pulled out and went to his mother's house."
 {¶ 6} When appellant got out of the car, the victim moved into the driver's *Page 5 
seat. However, appellant came back to the car and borrowed the victim's cellular telephone because he needed to find a key to get into the house. He then got back in the car and told the victim to drive him to Euclid so he could get a key.
 {¶ 7} The victim drove her car onto eastbound Interstate 90. Appellant told her he was about to kill her, and punched her in the face. He then pushed the steering wheel toward the wall to the left of the high-speed lane and ordered her to stop the car. He pulled her over to the passenger seat and he moved into the driver's seat. As he pulled back into traffic, he punched her again, and told her she was "going to die tonight." The victim opened the car door and leaned out in an attempt to roll out of the car, but appellant grabbed her hair and pulled her back in and locked the door. He then punched her again.
 {¶ 8} Appellant questioned the victim about Poonks and punched the victim in the face repeatedly. He told her he was going to kill her because she ruined "his life and our family." He took her cellular telephone and began to call various numbers saved on it. He dropped the phone and ordered the victim to retrieve it from the back seat. When she did, she tried to call 911 but the call did not go through. Appellant took the phone back.
 {¶ 9} Appellant pulled into a rest stop and tried to make the victim get in the car trunk, but she refused. As they drove down the highway, he took her money and threw all but $20 of it out the window. He also took her necklaces and threw them out the window. In Pennsylvania, they pulled into a closed gas station, where he *Page 6 
took her pants and boots, stating that "if you're naked, you're not going to run through cornfields in the snow." He went to another gas station and purchased gas, then went to a Burger King and got back on the freeway.
 {¶ 10} A police officer pulled them over, and the victim rolled out of the car. She was wearing only a sweater. She told the officer that appellant was going to try to kill her. The police officer called an ambulance, which took her to the hospital.
 Law and Analysis {¶ 11} Both of appellant's assignments of error challenge the sufficiency of the evidence to support the charges. These assignments raise a question of law, whether, viewing the evidence in the light most favorable to the state, any rational trier of fact could have found the appellant guilty beyond a reasonable doubt. State v. Smith (1997), 80 Ohio St.3d 89, 113.
 {¶ 12} Appellant's first assignment of error contends that the evidence was insufficient to support the aggravated robbery charge. Aggravated robbery is statutorily defined by R.C. 2911.01, in pertinent part as follows:
 (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 * * *
 (3) Inflict, or attempt to inflict, serious physical harm upon another.
 {¶ 13} Appellant claims there was no evidence of a theft offense. However, *Page 7 
there was evidence that appellant forcibly took a vehicle, money, jewelry, clothing and a cellular telephone from the victim. There was testimony that he threw the money and jewelry out of the car window, demonstrating his intent to deprive her of them permanently; his threats to kill the victim provides evidence of his intent to withhold her other property permanently. Accordingly, we overrule the first assignment of error.
 {¶ 14} Appellant's second assignment of error claims there was insufficient evidence of rape. Rape is defined in pertinent part as follows: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." R.C. 2907.02(A)(2). Appellant argues that there was no evidence that the sexual contact between the victim and appellant was not consensual. We disagree. There was evidence that appellant pushed the victim's face against the passenger side car window, pulled down her pants and engaged in sexual intercourse with her even though she was crying. From this evidence, a reasonable factfinder could find beyond a reasonable doubt that appellant forced the victim to engage in sexual conduct with him. Therefore, we overrule the second assignment of error.
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment *Page 8 
into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ANTHONY O. CALABRESE, JR., P.J., and MELODY J. STEWART, J., CONCUR *Page 1